**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

SAFET HAJRA,

                    Plaintiff,

        v.                                      Civil No. 15-7513(RMB/AMD)

WAWA, INC.,                                     **OPINION**

                    Defendant.

APPEARANCES:

Swati M. Kothari, Esq.
Law Offices of Swati M. Kothari
212 Route 38, Suite 200
Moorestown, NJ 08057
        *Attorney for Plaintiff*.

Edward Nicholas Yost, Esq.
Wawa, Inc.
260 Baltimore Pike
Wawa, PA 19036
-and-
Frank P. Spada, Jr., Esq.
Semanoff, Ormsby, Greenberg & Torchia, LLC
2617 Huntingdon Pike
Huntingdon Valley, PA 19006
        *Attorneys for Defendant*.

        BUMB, United States District Judge:

        This matter comes before the Court upon the filing of a

motion for summary judgment [Dkt. No. 14] by Defendant Wawa,

Inc. (the "Defendant" or "Wawa"), seeking the dismissal of the

above-captioned matter brought by Plaintiff Safet Hajra (the

"Plaintiff" or "Hajra") in its entirety. Having considered the

parties' submissions and for the reasons set forth below, the

Court grants Defendant's motion.

## I. Factual and Procedural Background[1]

---

[1] All background facts are drawn from the affidavits and depositions submitted by the parties, as well as the Defendant's Statement of Material Facts (under L. Civ. R. 56.1), and are construed in the light most favorable to Plaintiff. See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004), cert. den'd, 543 U.S. 956 (2004). Plaintiff did not submit a Responsive Statement of Material Facts as required by the Local Rule, but submitted what appeared to be a self-serving declaration, unsupported by anything else in the record, attempting to "plug the holes" in his case. Because Plaintiff failed to comply with L. Civ. R. 56.1, the Court could have deemed undisputed every supported factual statement in Defendant's 56.1 statement. See, e.g., Callahan v. U.S. Postal Serv., No. CIV.A. 13-3147 (SRC), 2014 WL 2999066, at *2 (D.N.J. June 25, 2014)("Plaintiff did not submit, with his opposition papers, a responsive statement of material facts. Thus, Plaintiff did not dispute any of the material facts asserted by Defendant, and Defendant's L. Civ. R. 56.1 Statement is deemed undisputed for purposes of the summary judgment motion."); Schneider v. Shah, No. CIV.A. 11-2266 (SRC), 2012 WL 1161584, at *3 (D.N.J. Apr. 9, 2012), aff'd, 507 F. Appx. 132 (3d Cir. 2012); Hooks v. Schultz, No. CIV. 07-5627 (JBS), 2010 WL 415316, at *4-5 (D.N.J. Jan. 29, 2010); Glazewski v. Corzine, No. 06-4107, 2009 WL 5220168, at *1 (D.N.J. Dec. 31, 2009)(deeming undisputed facts in defendant's 56.1 statement where pro se plaintiff failed to submit responsive statement). Rather than taking this drastic step, the Court issued an Order [Dkt. No. 23] directing the parties to provide additional briefing on (1) the proper consequence for Plaintiff's failure to comply with the rules, and (2) whether Plaintiff's declaration was a "sham affidavit" for which Plaintiff should be sanctioned. Plaintiff's submission in response to the Court's Order included additional citations to the record, but did nothing to convince the Court that his declaration was anything more than a half-hearted attempt to create "dispute" where none existed on the record. The Court thus relies on Plaintiff's declaration only where the statements therein are supported by the record, and presumes that the facts contained in Defendant's statement of material facts are true unless they are

A. <u>Plaintiff's Employment at Wawa</u>

Plaintiff is a Muslim who immigrated to the United States from Kosovo. (Pl.'s Dep. 9:12-14). He was hired as a Customer Service Associate at Wawa's Pemberton, New Jersey store in or around September 2010 by its General Manager, Emmanuel Paul ("Paul"). (<u>Id.</u> at 16:2-20). In or around November 2010, Plaintiff transitioned from Customer Service Associate to Fuel Court Associate. (<u>Id.</u> at 24:22-25:5; 45:5-10; Deposition of Emmanuel Paul ("Paul Dep.") at 51:10-52:9). In each of these positions, Plaintiff was an at-will employee. (Yost Decl., Ex. C at 1 [Dkt. No. 14-5]).

Plaintiff was initially paid $9.00 per hour as a Customer Service Associate. (Yost Decl., Ex. D [Dkt. No. 14-6]). Around the time he was transferred to the fuel court, Plaintiff's pay was raised to $9.10 per hour. (<u>Id.</u>) Plaintiff's hourly pay was again raised to $9.25 per hour in March, 2011. (<u>Id.</u>) In March 2012 Plaintiff's pay was raised to $9.65 per hour. (<u>Id.</u>)

When Plaintiff was hired as a Customer Service Associate, he was provided with a uniform including a shirt, hat, and apron. (Pl.'s Dep. 21:11-24). When he was transferred to the fuel court, Wawa provided Plaintiff with a Fuel Court Associate

---

controverted by the record. <u>See</u> <u>Boswell v. Eoon</u>, 452 F. App'x 107, 111 (3d Cir. 2011)(discussing <u>Longoria v. New Jersey</u>, 168 F.Supp.2d 308, 312 n. 1 (D.N.J. 2001)).

uniform, which consisted of a shirt, pants, a jacket, and a hat. (Id. at 45:5-21). Wawa employed an automated system through which employees could log in and order new uniforms themselves. (Id. at 44:23-45:4). During his time as a Fuel Court Associate, Plaintiff attempted to use this system to request a new uniform, but because he was still listed as a Customer Service Associate in Wawa's computer system he was only able to order a new shirt. (Id. at 47:7-25; Paul Dep. at 51:18-52:4).[2]

As a Fuel Court Associate, Plaintiff's responsibilities included, among other things, providing service to customers at Wawa's gas station, pumping gas for customers, processing payments for gas, and performing other tasks both inside and outside of the store as assigned. (Pl.'s Dep. at 25:23-27:6; Paul Dep. at 52:10-18; Yost Decl., Ex. F, at 1-2 [Dkt. No. 14-2]). Plaintiff worked overnight on the fuel court, working shifts of varying lengths between 10:00 P.M. and 7:00 A.M. (Pl.'s Dep. at 43:2-13). On a typical shift, Plaintiff was the only Fuel Court Associate on duty and was alone on the fuel court. (Id. at 51:21-23).

The Shift Manager for the majority of Plaintiff's shifts was Paul Ashton ("Ashton"). (Id. at 48:18-50:1). Ashton, who as

---

[2] Plaintiff alleges that his inability to order a new uniform was a discriminatory act on the part of Wawa. Plaintiff, however, has not introduced any evidence to support this conclusion.

a Shift Manager was responsible for the operations of the store during his shift, worked inside the store while Plaintiff worked outside. (Id.) In addition to Ashton, Plaintiff worked at various times with, among others, Emmanuel Paul and Elaine Crawford ("Crawford").

B. The Allegedly Discriminatory Remarks

Crawford was hired in 2011 as an Assistant General Manager. (Deposition of Elaine Crawford ("Crawford Dep.") at 13:9-15). On at least two occasions, while at work, Crawford told Plaintiff to "speak English."[3] (Pl.'s Dep. at 147-48; Crawford Dep. at 74:9-11). The day after the last of these comments, which Crawford made on or about April 29, 2012, Plaintiff complained to Paul. (Pl.'s Dep. at 147:12-14; Paul Dep. at 49:14-50:18).

In response to Plaintiff's complaint, Paul approached Crawford and told her that Plaintiff had taken offense to what she said, and that she should desist from making such comments, whatever her intent. (Paul Dep. at 50:5-10; Crawford Dep. at 59:24-60:3). Paul also issued Crawford a written warning, known

---

[3] In the Complaint, Plaintiff alleges that Crawford told him to "speak English" three times, and at oral argument Plaintiff's counsel maintained that there had been three such comments. Crawford admits to telling Plaintiff to "speak English" twice, but states that she made these comments jokingly. (Crawford Dep. at 59:5-60:3, 74:9-11). As is detailed further below, Crawford's comments ceased after Plaintiff complained to Paul, and whether Crawford told Plaintiff to "speak English" twice or three times before Plaintiff complained is not material.

as a "FOSA" in Wawa corporate parlance. (Paul Dep. 50:11-18).
The next day Crawford sought out Plaintiff and apologized.
(Pl.'s Dep. 147:15-148:1; Crawford Dep. 60:4-15). Crawford made
no further comments after being reprimanded by Paul (Pl.'s Dep.
148:5-9).

C. The "Drive Offs" and Plaintiff's Termination

In late April, 2012, around the time Plaintiff complained
of Crawford's comments to Paul, Paul noticed that there had been
several "drive-offs" registered on the fuel court that month. A
"drive-off" occurs when a customer gets gas, but drives away
without ever paying. (Id. at 55:5-10). The April, 2012 "drive-
offs" came to Paul's attention when he reviewed the store's
Transaction Journal.[4] The Transaction Journal is a report
generated by Wawa that captures, among other things, the date
and time of every transaction at the store (including "drive-
offs"), the register at which the transaction was processed, the
type of transaction, the amount of the transaction, and the
employee who was logged into the register at the time of the
transaction. (See, e.g., Yost Decl., Ex. J [Dkt. No. 14-12]).

---

[4] Ordinarily, Patricia Moore, an Assistant General Manager at the
Pemberton Wawa, was tasked with reviewing the Transaction
Journal, and she did so on roughly a daily basis. (Paul Dep.
11:17-22, 13:19-21). In April 2012, however, Moore was ill and
this task fell on Paul. (Id. at 11:17-22). This is why,
according to Paul, it took so long for him to notice the alleged
"drive-offs."

When Paul looked into these transactions, he noticed that
several had occurred during Ashton's (the overnight shift
manager) shifts, and that Ashton's employee PIN[5] had been used to
process several "drive-offs" that month. (Paul Dep. 13:21-14:5).
According to Paul, this "raised a red flag." (Id.) On April 30,
2012, alerted to what he perceived as a possible irregularity,
Paul contacted Patricia Wallace ("Wallace"), who worked in loss
prevention at Wawa, and asked her to investigate. (Deposition of
Patricia Wallace "Wallace Dep." at 15:21-23, 40:1-7; Yost Decl.,
Ex. M [Dkt. No. 14-15]; see also, Paul Dep. 11-13).

Wallace investigated by reviewing the Transaction Journal,
video of the fuel court—including video of the kiosks where the
registers were housed, and the timesheets for the date and time
of each of the transactions. (Wallace Dep. at 32:16-19). Upon
conducting her review, Wallace concluded that on at least eleven
occasions, Plaintiff had performed fraudulent "drive-offs," that
is, he registered a "drive-off" in Wawa's system when the
customer had actually paid for gas in cash.[6] Wallace reached this

---

[5] Each employee at Wawa has a unique PIN that he or she uses to
log in to registers. (Paul Dep. at 26:19-27:5).
[6] The apparently fraudulent "drive-offs" occurred at the
following times and in the following amounts: April 1, 2012 at
1:40 A.M. ($50.00); April 3, 2012 at 1:43 A.M. ($35.00); April
9, 2012 at 11:29 P.M. ($20.00); April 10, 2012 at 12:10 A.M.
($20.00); April 12, 2012 at 12:32 A.M. ($40.00); April 15, 2012
at 2:03 A.M. ($25.00); April 15, 2012 at 2:17 A.M. ($40.00);
April 19, 2012 at 5:32 A.M. ($30.00); April 27, 2012 at 5:14
A.M.($43.00); April 27, 2012 at 10:18 P.M. ($20.00); and April

conclusion based on (1) her opinion that none of the typical signs of a "drive-off"—customers getting out of their vehicles to remove the nozzle from their cars themselves and speeding off—were present; (2) the fact that Plaintiff was working at the time each of the supposed "drive-offs" occurred; and (3) the fact that Plaintiff was on video at the register at which each of these "drive-offs" was entered at the time it was entered. (Id. at 25:2-8, 32:8-19, 46:4-15, 65:8-20, 102:12).

At Plaintiff's deposition, counsel for Wawa walked Plaintiff through the process Wallace had undertaken, having Plaintiff confirm that he was on duty when these "drive-offs" occurred and that he was indeed shown on video in the register kiosks at or about the time the "drive-offs" were processed. (See Pl.'s Dep. 68-110). The video contained a time signature, which Plaintiff also acknowledged. (Pl.'s Dep. at 68-115). Still, Plaintiff denies that he performed any fraudulent "drive-offs." He further maintains that because, according to Plaintiff, a manager's PIN is required to process a "drive-off," he could not have executed the majority of the fraudulent "drive-offs" of which he was accused.[7]

---

28, 2012 at 12:06 A.M. ($30.00). (See Yost Decl., Ex. J; Pl.'s Dep. 68-110).

[7] It is not clear whether Plaintiff's belief that a manager's PIN is required to process a "drive-off" is accurate or reasonable, as several of the "drive-offs" listed in the Transaction Journal bare only Plaintiff's name. (See, e.g., Yost Decl., Ex. J at 3,

On May 4, 2012, Wallace interviewed Plaintiff in Paul's office. (Yost Decl., Ex. M; Pl.'s Dep. at 113:1-3; Wallace Dep. at 42:4-8). Paul was present for parts of this interview, but was not there for its entirety. (Pl.'s Dep. at 113:14-16; Wallace Dep. at 42:14-22). Paul and Wallace played Plaintiff the videos from the fuel court at the time of the "drive-offs" and asked him a number of questions about what he was being shown. (Wallace Dep. at 45:3-6; Pl.'s Dep. at 115:4-8; Paul Dep. at 48:10-12). Plaintiff denied having stolen anything. Plaintiff also alleges that during the course of the interview Wallace called him a "criminal" and threatened to have him deported. (Pl.'s Dep. 114:21-115:1). Wallace denies having made either comment. At the close of the interview, Wallace informed Paul that she had concluded that Plaintiff fraudulently registered several "drive-offs." (Wallace Dep. at 89:18-90:12; Paul Dep. at 23:3-5). Based on this information, Paul immediately terminated Plaintiff's employment. (Pl.'s Dep. 122:13-18; Wallace Dep. at 45:3-6; Paul Dep. at 39:3-4).

---

4). Moreover, Defendant asserts that Ashton provided Plaintiff with his PIN. (Yost Decl., Ex. K [Dkt. No. 14-13]; Wallace Dep. at 36:13-37:2). Plaintiff denies that he knew Ashton's PIN. (Pl.'s Dep. 61:16). This issue, among others raised by Plaintiff, is inconsequential, as explained more fully below. Plaintiff is captured on video standing at the registers when each of these "drive-offs" were processed at the time of the transactions, which is corroborated by the Transaction Journal.

Wallace also filed a report with the Pemberton Police Department accusing Plaintiff of theft and provided a detective with copies of the video surveillance and Transaction Journal. (Wallace Dep. at 72:10-20; Yost Decl., Ex. M, at 2). Plaintiff was arrested and charged with theft, ultimately pleading guilty to a lesser offense. (Pl.'s Dep. at 126:7-11, 128:22-129:18; Yost Decl., Ex. N [Dkt. No. 14-16]).

D. <u>This Suit</u>

In August, 2012, Plaintiff filed a charge of discrimination against Wawa with the Equal Employment Opportunity Commission ("EEOC"). On August 3, 2015, the EEOC issued a Notice of Right to Sue. (Compl. ¶ 10). On October 15, 2015, Plaintiff filed a four-count Complaint alleging (1) national origin and religious discrimination in violation of Title VII of 42 U.S.C. § 2000e, et seq. ("Title VII") ("Count One"); (2) retaliation in violation of Title VII ("Count Two"); (3) discrimination and hostile work environment harassment in Violation of 42 U.S.C. § 1981 ("Section 1981") ("Count Three"); and (4) retaliation in violation of Section 1981 ("Count Four"). (Compl. ¶ 40-57). On December 10, 2015, Defendant answered.

On February 3, 2017, after discovery had been completed, Wawa filed this motion, and on February 21, 2017, Plaintiff submitted his opposition. As discussed above, Plaintiff's opposition did not include the statement of material facts

required by L. Civ. R. 56.1. Instead of the requisite statement, Plaintiff attached a declaration lacking any citation to the record. (Pl.'s Decl. [Dkt. No. 18-2]). On September 22, 2017, the Court ordered the parties to brief two issues: (1) what consequence Plaintiff should face for failure to comply with Fed. R. Civ. P. 56(c) and L. Civ. R. 56.1 and (2) whether Plaintiff's Declaration is a "sham affidavit" inconsistent with his previous testimony and submitted solely for the purpose of defeating summary judgment, see, e.g., Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 251-55 (3d Cir. 2007), and if so, what effect that should have on the Court's consideration of the evidence presented by Plaintiff therein. The Court held oral argument on November 6, 2017.[8]

## II. Summary Judgment Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of

---

[8] Plaintiff also filed a motion for sanctions for spoliation of evidence on February 10, 2017, alleging that Wawa had inappropriately discarded video of the interview conducted by Wallace on the day Plaintiff was terminated. [Dkt. No. 15]. The Court stayed Plaintiff's motion pending its decision on summary judgment. [Dkt. No. 16]. For the reasons set forth herein, the Court finds that the unavailability of the video is irrelevant to the Court's disposition, and Plaintiff's motion for sanctions is denied.

the suit under the governing law[.]" <u>Anderson v. Liberty Lobby,</u> <u>Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." <u>Id.</u>

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." <u>Meyer v. Riegel Prods.</u> <u>Corps.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. <u>Anderson</u>, 477 U.S. at 252. Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. <u>Scott</u> <u>v. Harris</u>, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for the nonmoving party[.]" <u>Matsushita Elec. Indus. Co. v. Zenith</u> <u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." <u>Celotex Corp. v.</u>
<u>Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.
56(c)). Then, "when a properly supported motion for summary
judgment [has been] made, the adverse party 'must set forth
specific facts showing that there is a genuine issue for
trial.'" <u>Anderson</u>, 477 U.S. at 250 (citing Fed. R. Civ. P.
56(e)).

In the face of a properly supported motion for summary
judgment, the nonmovant's burden is rigorous: he "must point to
concrete evidence in the record"; mere allegations, conclusions,
conjecture, and speculation will not defeat summary
judgment. <u>Jackson v. Danberg</u>, 594 F.3d 210, 227 (3d Cir.
2010) (citing <u>Acumed LLC v. Advanced Surgical Servs., Inc.</u>, 561
F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may
not defeat summary judgment.")).

**III. Analysis**

    A. <u>Discrimination under Title VII and Section 1981</u>

In Counts I and III of the Complaint, Plaintiff alleges
that Wawa discriminated against him on the basis of his national
origin and religion in violation of Title VII and national
origin and "race/color" in violation of Section 1981.[9]

---

[9] The parties dispute whether national origin is a protected
category under Section 1981. Although the Third Circuit has not
directly addressed the issue, several courts within the circuit,
and several other circuits, have held that claims of national

13

Under Title VII, an employer may not "discriminate against any individual . . . , because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." "In the Third Circuit, the elements of employment discrimination under Title VII are identical to the elements of a section 1981

---

origin discrimination are not cognizable under Section 1981. See Wesley v. Palace Rehab. & Care Ctr., L.L.C., 3 F. Supp. 3d 221, 229 n. 3, 233-34 (D.N.J. 2014) (citing El-Zabet v. Nissan North America, Inc., 211 Fed.Appx. 460, 463 (6th Cir. 2006) ("... it is legally impossible to state a claim for national-origin discrimination under section 1981 ..."); Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1391 n. 7 (10th Cir. 1991) ( "However, actually § 1981 does not outlaw national origin discrimination per se, only discrimination on the basis of race."); Fonseca v. Sysco Food Serv., 374 F.3d 840, 850 (9th Cir. 2004) (finding "national origin discrimination is not within the ambit of § 1981," allowing claim of racial discrimination based on plaintiff being "Hispanic" rather than national origin discrimination based on plaintiff being "Guatemalan."); Torgerson v. City of Rochester, 643 F.3d 1031, 1053 (8th Cir. 2011) ("Section 1981 does not authorize discrimination based on national origin."); but see Ptasznik v. St. Joseph Hosp., 464 F.3d 691, 699 n. 4 (7th Cir. 2006) (finding "national origin discrimination" is equal to "ancestry or ethnic characteristics" and thus protected by § 1981)). The Court need not rule on this issue, however, because as discussed below, Plaintiff has failed to set forth evidence sufficient to establish that his termination was based on discrimination of any type.

claim." <u>Schurr v. Resorts Int'l Hotel, Inc.</u>, 196 F.3d 486, 499 (3d Cir. 1999) (citation and quotation omitted).

Because Plaintiff relies on circumstantial evidence of discrimination, his claims must be established using the three-step burden-shifting analysis established by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). The first step of this analysis requires Plaintiff to establish a prima facie case of discrimination by showing that "(1) [he] belongs to a protected class; (2) he . . . was qualified for the position; [and] (3) he . . . was subject to an adverse employment action despite being qualified; (4) under circumstances that raise an inference of discriminatory action." <u>Sarullo v. U.S. Postal Serv.</u>, 352 F.3d 789, 797 (3d Cir. 2003) (citations omitted). One way to meet the fourth element of the prima facie case is to show "that the employer has treated more favorably similarly situated persons not within the protected class." <u>Jones v. Sch. Dist. of Phila.</u>, 198 F.3d 403, 413 (3d Cir. 1999).

To rebut the inference of discrimination created by the prima facie case, the defendant must "offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the [adverse employment action]." <u>Showalter v. Univ. of Pittsburgh Med. Ctr.</u>, 190 F.3d 231, 235 (3d Cir. 1999) (citations omitted). If the defendant satisfies this burden, then the Plaintiff must establish that

the reasons offered by Defendant are pretextual, and that the real reason for the adverse employment action was discrimination. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).

### 1. <u>Plaintiff's Prima Facie Case</u>

Defendant argues that Plaintiff has failed to establish a prima facie case of race, national origin, or religious discrimination. It argues that Plaintiff has failed to present sufficient evidence on all four elements.

Turning to the first element of the prima facie case—protected status—the parties do not dispute that Plaintiff is an immigrant from Kosovo and a Muslim. The parties do not address Plaintiff's race anywhere in the record. For the purpose of this analysis, however, the Court will assume that Plaintiff is a member of a protected class for the purposes of both Title VII and Section 1981.

Where the second element is concerned, Defendant argues that Plaintiff "cannot establish that he was qualified for the position that he sought to retain" because he stole from his employer. (Br. in Supp. of Def.'s Mot. for Summ. J. at 14). The record reflects that Plaintiff was a well-respected and well-liked employee who had a positive reputation. (Paul Dep. 13:11-12)("It burns me to let him go because he was one of my best employees."). Moreover, Defendant does not argue that Plaintiff

was incapable of performing his duties as a Fuel Court Associate. Rather, Defendant argues that Plaintiff's violation of company policy rendered him subject to rightful termination. Wawa's position that Plaintiff was terminated because of the fraudulent "drive-offs," however, is more appropriately considered as part of the "legitimate nondiscriminatory reason" and pretext analysis and is evaluated below. The second element is thus satisfied.

As to the third element, Wawa disputes that Plaintiff has established any adverse employment action under circumstances giving rise to an inference of discrimination. The Court understands Plaintiff to identify the following "adverse employment actions" to support his discrimination claim: (1) he was made to clean toilets, sweep, mop, and clean the store; (2) he was paid less than other employees, including one named "Peter"; (3) he was prevented from ordering new uniforms; and (4) he was terminated. (Compl. ¶ 12-39). The Court addresses each action.

Not every unwelcome employment decision is actionable. Instead, "[a]n actionable adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Betts v. Summit Oaks Hosp., --- Fed. Appx. ----,

2017 WL 1506640, at *2 (3d Cir. Apr. 27, 2017) (quoting

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Put differently, an adverse employment action must be "serious

and tangible enough to alter an employee's compensation, terms,

conditions, or privileges of employment." Fiorentini v. William

Penn Sch. Dist., 665 Fed. Appx. 229, 234 (3d Cir. 2016) (quoting

Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).

First, as to Plaintiff's alleged trouble ordering a new

uniform, this does not rise to the level of an "adverse

employment action." This was a mere inconvenience as opposed to

a "serious" and "tangible" change to Plaintiff's "compensation,

terms, conditions, or privileges of employment." Fiorentini, 665

Fed. Appx. at 234 (quotation omitted). Even assuming that it

rises to the level of an adverse employment action, Plaintiff

has not presented any evidence to dispute Defendant's position

that a computer error left Plaintiff listed as a Customer

Service Associate on Wawa's system.

Moreover, Plaintiff presents no evidence to support his

bare allegations that his pay was unfairly low or that he was

the only employee asked to perform custodial tasks. In fact, the

record indicates otherwise. Plaintiff's job description called

for him to perform various tasks as assigned. (Yost Decl., Ex.

F, at 1-2). Paul testified that not only did other associates

help clean the store—including the bathrooms—but that Paul

himself, the General Manager, did so. (Paul Dep. 52:10-18).
Furthermore, at the time of his termination, Plaintiff was paid
a higher hourly wage than twenty-two of the twenty-seven
Caucasion employees at the Pemberton Wawa. (Yost Decl., Ex. E
[Dkt. No. 14-7]). In short, Plaintiff has not identified any
Wawa employee who was being paid more than him.

Finally, Plaintiff's termination[10] is unquestionably an
adverse employment decision. The inquiry thus turns on whether
Plaintiff's termination occurred "under circumstances that raise
an inference of discriminatory action." Sarullo, 352 F.3d at
797. It did not. Other than Crawford, Plaintiff does not allege
that anyone at Wawa so much as knew of, let alone acknowledged,
his national origin, race, or religion. Nor does Plaintiff
identify any employee from outside of his protected classes who
received preferential treatment. Plaintiff admits that he did
not have any issues with anyone at the Pemberton Wawa. (Pl.'s
Dep. 149:9-10). Moreover, the record does not establish that
Crawford was involved in the decision to terminate Plaintiff,
and Plaintiff does not claim otherwise.  In the end, Plaintiff's
subjective belief that he was terminated due to his race is not

---

[10] Defendant argues that Plaintiff did not allege that
Plaintiff's termination was discriminatory. While Plaintiff's
claims may have been inartfully pled, the Court will construe
the Complaint as having alleged that Plaintiff's termination was
discriminatory.

supported by any concrete evidence in the record and, standing alone, is insufficient to establish the fourth element of the prima facie case.[11] See Holmes v. Newark Pub. Sch., 2016 WL 3014404, at *9 (D.N.J. May 25, 2016) (granting summary judgment, in part, because plaintiff "ground[ed] his claims of discrimination and retaliation in unsupported, self-serving allegations," rather than "evidence from which a reasonable jury could find that these purported adverse actions were tied to any protected characteristic or conduct.").

Based on the undisputed record before the Court, it is clear that, aside from his termination, Plaintiff has suffered no adverse employment action "serious and tangible enough to alter [his] compensation, terms, conditions, or privileges of employment." Fiorentini, 665 Fed.Appx. at 234. Furthermore,

---

[11] Plaintiff's claim that during their interview Wallace called Plaintiff a "thief" and "illegal" and threatened to have him deported (assuming it is true, as this Court must do at this stage, and even assuming this could be the basis of a valid claim for national origin discrimination) does not get Plaintiff around the issue of pretext, see infra. Moreover, the Court notes that it is unlikely these comments could form the basis of a claim of national origin discrimination. See Cortezano v. Salin Bank & Tr. Co., 680 F.3d 936, 940 (7th Cir. 2012)(citing Espinoza v. Farah Mfg. Co., 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973)) ("The question, then, is whether Title VII guards against alienage-based discrimination. It does not. Discrimination based on one's status as an immigrant might have been included within the ambit of "national origin" discrimination, see 42 U.S.C. § 2000e-2(a)(1), but that is not the path the Supreme Court has taken.").

there is no evidence in the record that could establish that any adverse employment actions occurred under circumstances that give rise to an inference of unlawful discrimination. Accordingly, Plaintiff has failed to establish a prima facie case of national origin, religion, or race discrimination under Title VII and Section 1981. Therefore, Defendant's motion for summary judgment is granted with regard to Plaintiff's discrimination claims (Counts One and Three).

2. Defendant's Legitimate Nondiscriminatory Reason and Pretext

Even were Plaintiff to establish his prima facie case, Defendant has produced ample evidence of its legitimate business reason for terminating Plaintiff: according to the results of the investigation conducted by Wallace, Plaintiff conducted a series of fraudulent "drive-off" transactions in April 2012. The process through which this conclusion was reached is solidly supported by the record (described in further detail below).

In light of the evidence introduced by Wawa, in order to withstand summary judgment Plaintiff must demonstrate pretext by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve . . . [Wawa's] . . . articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the . . .

action." <u>Fuentes</u>, 32 F.3d at 764; <u>accord</u> <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 644 (3d Cir. 1998). To establish pretext, "[P]laintiff 'cannot simply show that . . . [Wawa's] decision was wrong or mistaken' but rather 'must demonstrate such 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons.''" <u>Daniels v. Sch. Dist. of Philadelphia</u>, 776 F.3d 181, 199 (3d Cir. 2015) (quoting <u>Ross v. Gillhuly</u>, 755 F.3d 185, 194 n. 13 (3d Cir. 2014) (quoting <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 331 (3d Cir. 1995))).

The Court finds that Plaintiff, in his attempt to show pretext, either ignores or distorts the record evidence. At oral argument, the Court pressed Plaintiff's counsel to address how the following evidence did not establish, at least in Wawa's mind, that Plaintiff conducted the fraudulent "drive-offs":

(1) The Transaction Journal provides information on when each supposed "drive-off" occurs, and at which register it is processed;

(2) Here, the Transaction Journal reveals that all of the supposed "drive-offs" were processed at registers on the fuel court;

(3)  Timecards establish that Plaintiff was working on the fuel court at the time of each of the supposed "drive-offs";

(4)  Plaintiff's own testimony establishes that Plaintiff typically worked alone on the fuel court; and finally, and most damning

(5)  Wawa surveillance video establishes that Plaintiff was alone in the kiosks housing each of the registers at which the "drive-offs" were processed at the exact moments they were processed.

Plaintiff concedes, as he must, that all of this is true. (Pl.'s Dep 70-115). Instead of confronting this evidence head on, however, Plaintiff obfuscates it by creating the illusion that there are material disputes of fact, when in reality, there are none. First, Plaintiff argues that a manager's PIN is required to process a "drive-off," and that not only did he not have access to any such PIN, Wawa policy actually forbade employees from sharing their PINS with others. Even if true, this does nothing to change the fact that Plaintiff was on video standing alone at the registers at which each of these "drive-offs" were processed when they were being processed. That another employee's PIN was used does not address the fact of Plaintiff's involvement. Second, Plaintiff contends, pointing to Crawford's testimony, that it was possible to process a drive-off from inside the store, and suggests that that may have been the case here. This too flies in the face of the record evidence. Because the relevant "drive-offs" were processed on

the fuel court, <u>not</u> from within the store, as established by the Transaction Journal, this possibility is foreclosed and this "dispute" is immaterial.[12]

In the end, Plaintiff's obfuscation of the record is more about pretense than pretext. Plaintiff's arguments ignore the reality of the record: Plaintiff, who was working alone on the fuel court, was captured on video standing at the registers from which fraudulent "drive-offs" were being processed, at the time they were being processed.[13] Indeed, this evidence was convincing enough that the Pemberton Police Department initially pursued a theft charge against Plaintiff.[14] (Yost Decl., Ex. N).

---

[12] Moreover, Plaintiff does nothing to cast doubt on the Defendant's evidence which tends to establish that Crawford played no part in his termination. He seemingly attempts to create confusion by mischaracterizing Paul's testimony about Patricia Moore's absence. Regarding Ms. Moore's responsibility for reviewing the Transaction Journals, and the reason why Paul did not conduct the review until the end of April, Plaintiff provides that "Paul is unsure whether Ms. Moore was still there in April or whether Ms. Crawford had taken over the duties originally handled by Ms. Moore." (Pl.'s Br. in Supp. of Opp. at 11). Plaintiff seemingly implies that Paul's testimony indicated that it may have been Crawford who reviewed the Transaction Journals in Moore's absence. Paul actually stated that he "know[s] for a fact" that Crawford played no part in reviewing these journals and he had done it himself. (Paul Dep. 32:19-33:2).

[13] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

[14] Although Plaintiff makes much of the fact that the charge was downgraded, such argument is not relevant to the conduct of Wawa.

This Court is "not required to scour the record to make the case of a party who did nothing." United States v. Stevenson, 832 F.3d 412, 421 (3d Cir. 2016) (internal quotations, citations, modifications omitted); accord Perkins v. City of Elizabeth, 412 Fed.Appx. 554, 555 (3d Cir. 2011) ("a court is not obliged to scour the record to find evidence that will support a party's claims."); Dawley v. Erie Indem. Co., 100 Fed. Appx. 877, 881 (3d Cir. 2004) ("Rule 56 does not oblige a district court to scour the entire record to find a factual dispute."). Nonetheless, this Court has scoured the record and has found no evidence that calls into doubt Wawa's articulated legitimate reason for terminating Plaintiff: that Plaintiff engaged in fraudulent "drive-offs." Thus, summary judgment on Counts One and Three is warranted on this ground, as well.

## B. Hostile Work Environment Harassment

Plaintiff alleges that he was subjected to a hostile work environment in violation of Title VII and Section 1981. Defendant argues that Plaintiff's claims do not rise to the level of severity and pervasiveness required to establish harassment. Plaintiff does not respond to Defendant's arguments.

"[T]he sine qua non of a hostile environment claim is 'a workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment[.]'" McKinnon v. Gonzales, 642 F.
Supp. 2d 410, 421 (D.N.J. 2009) (emphasis in original) (quoting
Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002)).
Thus, to establish a hostile work environment claim against
Wawa, Plaintiff must prove that: (1) he suffered intentional
discrimination on the basis of national origin, religion, or
race; (2) the discrimination was pervasive and regular; (3) the
discrimination detrimentally affected him; (4) the
discrimination would detrimentally affect a reasonable person
who belonged to the same protected class; and (5) the existence
of respondeat superior liability. Huston v. Procter & Gamble
Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009).

     In determining whether an environment is hostile, "a court
must consider the totality of the circumstances, including 'the
frequency of the discriminatory conduct; its severity; whether
it is physically threatening or humiliating, or a mere offensive
utterance; and whether it unreasonably interferes with an
employee's work performance.'" Mandel v. M&Q Packaging Corp.,
706 F.3d 157, 168 (3d Cir. 2013)(quoting Harris v. Forklift
Sys., Inc., 510 U.S. 17, 23 (1993)). "Title VII is not intended
as a 'general civility code,' and requires that 'conduct must be
extreme' to constitute the kind of 'change in the terms and
conditions of employment' the statute was intended to target."
Burgess v. Dollar Tree Stores, Inc., 642 Fed. Appx. 152, 155 (3d

Cir. 2016) (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)); <u>see also</u> <u>Vance v. Ball State Univ.</u>, 133 S. Ct. 2434, 2455 (2013) (Ginsburg, J., dissenting) ("Title VII imposes no 'general civility code.' It does not reach 'the ordinary tribulations of the workplace,' for example, 'sporadic use of abusive language' or generally boorish conduct.") (internal citations omitted).

Plaintiff's hostile work environment claims are entirely premised upon Crawford's "speak English" comments. Crawford, for her part, admits making these comments, albeit "jokingly." Plaintiff claims that Crawford made three such comments. Crawford states, and Plaintiff admits, that after Plaintiff complained to Paul and Paul spoke to Crawford, no further comments were made. While Crawford's comments were in poor taste, "not every comment, action or joke creates a hostile work environment. That is, '[t]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate ... liability." <u>Miller v. Thomas Jefferson Univ. Hosp.</u>, 565 Fed. Appx. 88, 93–94 (3d Cir. 2014) (quoting <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 428 (3d Cir. 2001)).

These offhand comments do not rise to the level of pervasiveness and severity required to establish a hostile work environment claim. <u>See, e.g.</u>, <u>Faragher</u>, 524 U.S. at 788

("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") Indeed, Plaintiff states that he doesn't "have a problem with [anybody] in work [sic]". (Pl.'s Dep. 149:9-11). Based on the undisputed facts, no reasonable jury could conclude that Plaintiff was subjected to a hostile work environment. Accordingly, summary judgment will be granted on Plaintiffs hostile work environment claims under Title VII and Section 1981.

### C. Retaliation under Title VII and Section 1981

Finally, in Counts Two and Four of the Complaint, Plaintiff alleges that he was subjected to retaliation for complaining to Paul about the "speak English" comments. (Compl. ¶ 45-48, 54-57). Like his claims of discrimination, Plaintiff's claims of retaliation are subject to the McDonnell Douglas burden-shifting framework. See Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015). To establish a prima facie case of retaliation, Plaintiff must demonstrate that: (1) he engaged in protected activity (under Title VII or Section 1981); (2) Defendant took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. See Hutchins v. United Parcel Service, Inc., 197 Fed. Appx. 152, 156 (3d Cir. 2006).

If Plaintiff establishes a prima facie case of retaliation, "the burden of production of evidence shifts to . . . [Wawa] to present a legitimate, non-retaliatory reason for having taken the adverse action." <u>Daniels</u>, 776 F.3d at 193 (citation omitted). If Wawa "advances such a reason, the burden shifts back to . . . [P]laintiff to demonstrate that . . . [Wawa's] proffered explanation was false, and that retaliation was the real reason for the adverse employment action." <u>Id.</u> (citation and internal quotation marks omitted).

Plaintiff has established the first two elements of his prima facie case: he complained to management about comments that he believed were discriminatory[15] and he suffered adverse employment actions, <u>i.e.</u>, an investigation for theft and his ultimate termination. <u>See</u> <u>Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.</u>, 450 F.3d 130, 135 (3d Cir. 2006)(recognizing informal complaints to management qualify as protected activity for purposes of a retaliation claim). The Court's analysis, therefore, turns on whether Plaintiff has

---

[15] As is discussed <u>supra</u>, the Court assumes, for the sake of this analysis, that Plaintiff has properly alleged membership in a protected class under Title VII and Section 1981. Moreover, regardless of whether the "discrimination" he complained of was actually actionable, so long as Plaintiff had an "objectively reasonable belief" that it was, he can establish the first prong of his prima facie case. <u>Daniels</u>, 776 F.3d at 193-94 (citing <u>Wilkerson v. New Media Tech. Charter Sch. Inc.</u>, 522 F.3d 315, 322 (3d Cir. 2008)).

established a causal connection between his complaint about Crawford's remarks and the investigation and firing.

"We consider 'a broad array of evidence' in determining whether a sufficient causal link exists to survive a motion for summary judgment." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)). Plaintiff admits that he does not believe that Paul, to whom he lodged his complaints of discrimination, retaliated against him, and that he doesn't know who, if anyone, did. (Pl.'s Dep. 149:17-24). Further, the undisputed record reflects that Crawford, who made the allegedly discriminatory "speak English" comments, had no involvement in the investigation or in Plaintiff's termination, and was on vacation when Plaintiff was terminated. (Crawford Dep. at 60:16-18). Moreover, Wallace testified that she was not aware of Plaintiff's complaints about Crawford (or familiar with who Crawford was) at the time she conducted the investigation that led to Plaintiff's termination, and Plaintiff points to nothing in the record to contradict this testimony. (Wallace Dep. 47:24-48:3).

Without evidence suggesting that either of the Wawa employees involved in his termination had reason to retaliate against him, Plaintiff's strongest evidence of a causal connection between his complaints and his termination is the

temporal proximity between the two. Where "unusually suggestive," the "proximity between protected activity and an employer's adverse action," standing alone, can establish a causal connection. Daniels, 776 F.3d at 196 (citing LeBoon, 503 F.3d 217 at 232 (3d Cir. 2007)). Here, the record establishes that Paul called Wallace to initiate the "drive-off" investigation on the same day that Plaintiff complained to him about Crawford. Plaintiff was then terminated within a week of that phone call. The Court finds that this proximity is enough to establish the third prong of the prima face case and to shift the burden to Wawa to provide a legitimate nonretaliatory reason for its actions. See Clark County School Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)(temporal proximity alone, when "very close," can in some instances establish a prima facie case of retaliation); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)(discharge of plaintiff two days after filing EEOC complaint found to be sufficient, under the circumstances, to establish causation).

As with his discrimination claims, however, Plaintiff's retaliation claims necessarily fail at the pretext stage. Wawa has proffered a legitimate reason for Plaintiff's termination, and the pretext analysis undertaken above applies to Plaintiff's claim of retaliation. This Court finds that no reasonable fact finder could conclude anything other than that Wawa would have

terminated Plaintiff for perpetrating fraudulent "drive-offs" whether he complained about Crawford's remarks or not.[16] As such, summary judgment will be granted on Plaintiff's retaliation claims (Counts Two and Four).

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted. An appropriate Order shall issue on this date.

 s/ Renee Marie Bumb
RENÉE MARIE BUMB
United States District Judge

DATED: January 26, 2018

---

[16] Plaintiff has not argued (with regard to either his discrimination or retaliation claims) that this Court should apply the mixed-motive theory set forth in Price Waterhouse v. Hopkins, 490 U.S. 228(1989), under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons. The Court notes, however, that Plaintiff has introduced no evidence that any of the decision makers in this case were motivated by any "illegitimate reasons." Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016)(quoting Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)). Thus, Plaintiff's claims would fair no better under a Price Waterhouse analysis.